88 August 12, 2026 No. 754

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

KLAMATH FALLS ASSOCIATION OF CLASSIFIED
EMPLOYEES,
*Respondent,*

*v.*

KLAMATH FALLS CITY SCHOOLS,
*Petitioner.*

Employment Relations Board
UP03921;
A182935

Argued and submitted May 20, 2025.

Nancy J. Hungerford argued the cause for petitioner. Also on the briefs was The Hungerford Law Firm.

Margaret S. Olney argued the cause for respondent. Also on the brief was Bennett Hartman, LLP.

Julian Marrs, C. Robert Steringer, and Harrang Long P.C., filed the brief *amicus curiae* for Oregon School Boards Association.

Before Ortega, Presiding Judge, Hellman, Judge, and O'Connor, Judge.

ORTEGA, P. J.

Affirmed.

## ORTEGA, P. J.

Petitioner Klamath Falls City Schools (the district) seeks judicial review in a contested case from a final order of the Employment Relations Board (ERB). ERB concluded that the district engaged in an unfair labor practice, under ORS 243.672(1)(a) and (b), when it disciplined an employee for using her work email during the workday to transmit union recommendations for the upcoming school board election. The district primarily argues that ERB erroneously interpreted and applied the relevant statutes. We conclude that ERB did not err. Specifically, we conclude that ORS 260.432(2) did not apply because the employee was on a sanctioned rest break from work duties, that ORS 243.804(5) did apply to the email because the record established that the school board election was a matter involving the business of the labor organization, and that substantial evidence supported ERB's determination that the district disciplined the employee "because of" the email, under ORS 243.672(1)(a). Accordingly, we affirm.

Before we describe the specifics of this case, we briefly set out for context the statutory provisions at issue. The Public Employee Collective Bargaining Act (PECBA) governs the issues in this case. Under ORS 243.672(1)(a) and (b), "[i]t is an unfair labor practice for a public employer or its designated representative" to "[i]nterfere with, restrain or coerce employees in or because of the exercise of rights guaranteed in ORS 243.662," or to "[d]ominate, interfere with or assist in the formation, existence or administration of any employee organization." In turn, ORS 243.662 provides that "[p]ublic employees have the right to form, join and participate in the activities of labor organizations of their own choosing for the purpose of representation and collective bargaining with their public employer on matters concerning employment relations." Additionally, under ORS 243.804(5)(c), "[a]n exclusive representative shall have the right to use the electronic mail systems or other similar communication systems of a public employer to communicate with the employees in the bargaining unit regarding *** [m]atters involving the governance or business of the labor organization." However, as relevant here, ORS 260.432(2) (2021), *amended by* Or Laws

2023, ch 268, § 1, provides that "[n]o public employee shall *** promote or oppose the nomination or election of a candidate *** while on the job during working hours[.]"

Against that statutory background, we summarize the facts as found by ERB in its detailed order. On a Friday at 10:37 a.m., Danskin, a school district employee and vice president of her union, Klamath Falls Association of Classified Employees (KFACE), sent an email to the KFACE bargaining unit—about 165 district employees—about an upcoming school board election. She sent the email from her district email address and sent it to members' district email addresses, who "regularly use their [d]istrict email to communicate with one another about 'union business.'" The email subject line was "[w]hy we recommended the following candidates," and included the "union team" recommendations for three candidates and the reasons for the recommendation, and, in that recommendation, opposed two incumbent candidates and specifically named one of those candidates as someone who "worked against our unions when she was part of the district negotiating team."

The email recommendations were part of a larger union effort to recruit and endorse "pro-labor, pro-education" candidates for the school board. ERB found that "the record establishes that the school board ultimately approves all agreements between KFACE and the [d]istrict," "that KFACE understood that the composition of the school board potentially affected its ability to represent its members, particularly in negotiating collective bargaining agreements that would garner the necessary approval of the school board," and that the "email communicated KFACE's perspective on candidates for that school board to its represented employees in furtherance of KFACE's role or function as the exclusive representative."

ERB found that Danskin did not personally write the recommendation; she copied and pasted the email from one sent to her and it represented the views of a union committee formed to make a recommendation, of which Danskin was a member. She also included her position as vice president of the union in her signature line. ERB specifically found that "as a union officer, Danskin sent the email to

notify the membership of the [union committee's] endorsement and position on school board candidates for the upcoming election." ERB also found that she sent the email during a "mid-workday break" using her personal laptop.

After the school board election, someone forwarded Danskin's email to the district's Human Resources Director. Ultimately, the district issued Danskin a letter of reprimand, stating that she had violated board policy and ORS 260.432 "by promoting and opposing the election of candidates during the workday on [d]istrict owned IMTC services and equipment." Danskin was aware of the policy but did not consider her email political activity, instead viewing it as "union/ school business." KFACE and Danskin filed a grievance concerning the letter of reprimand, which the superintendent denied, and the district's school board upheld the denial.

KFACE then filed an unfair labor practice complaint with ERB, asserting that the district had violated ORS 243.672(1)(a), (b), and (c) of PECBA, based on its discipline of Danskin and on its conduct with another employee, Thornton.[1] An Administrative Law Judge (ALJ) held a contested case hearing on the matter. In the proposed order, the ALJ determined that the district did not violate PECBA with respect to Danskin, but did violate ORS 243.672(1)(a) and (c) with respect to Thorton.

KFACE filed objections to the proposed order, and ERB heard oral argument on the matter. In its final order, ERB determined that the district violated ORS 243.672 (1)(a) and (c) with respect to Thornton, violated ORS 243.672(1)(a) and (b) with respect to its discipline of Danskin, and directed the district to pay KFACE a civil penalty. As relevant here, ERB concluded that ORS 260.432 did not prohibit Danskin from sending the email because she was on a midday break from work. ERB next concluded that Danskin's email was authorized under ORS 243.804(5)(c), because part of KFACE's "business" is to work toward having a school board more willing to ratify collective bargaining agreements reached by the bargaining teams, and that Danskin's email was such a communication. Because

---

[1] The district does not contest ERB's final order with respect to Thornton, so we do not recite the facts underlying that aspect of the order.

Danskin, as a union officer, had a statutory right to send the email, ERB concluded that the district's discipline of her interfered with the administration of KFACE, in violation of ORS 243.672(1)(b). Finally, ERB also concluded that the district's discipline of Danskin violated ORS 243.672(1)(a) because Danskin was engaging in protected activity when she sent the email within the meaning of ORS 243.662, and the discipline was "because of" the email. ERB also concluded that there was "a derivative violation of the 'in' prong of ORS 243.672(1)(a) because the natural and probable effect of the [d]istrict's action would be to chill the exercise of protected rights."

The district seeks judicial review of ERB's final order, arguing that it did not violate ORS 243.672(1)(a) and (b) with respect to Danskin. The district makes several discrete arguments, and we address each in turn.[2] The Oregon School Boards Association (OSBA) also has filed an *amicus* brief in support of the district with respect to ERB's interpretation of ORS 243.804(5).

On review from an agency final order in a contested case, we review the agency's findings of fact for substantial evidence in the record, and its conclusions of law for legal error. ORS 183.482(8).

We first address the district's arguments that contest ERB's findings of fact. The district argues that ERB mischaracterized Danskin's testimony when it found that she sent the email during a break from work, and, in its reply brief, the district also appears to take issue with ERB's finding that Danskin was not expressing her personal opinion

---

[2] The district also raises arguments based on the parties' collective bargaining agreement that we do not address. The district asserts that the agreement prohibited Danskin from sending the email, regardless of any interpretation of ORS 260.432 or ORS 243.804(5). However, ERB determined that the district could not rely on the collective bargaining agreement because the district failed to plead it as an affirmative defense. The district does not assign error to that legal ruling. To the extent that the district raises an issue of ERB modifying a fact found by the ALJ as to whether the district raised the affirmative defense, on review of the record, we determine that the district did not plead an affirmative defense based on the collective bargaining agreement. *Corcoran v. Board of Nursing*, 197 Or App 517, 527, 107 P3d 627 (2005); *see also* ORS 183.650(4) ("[I]f a party seeks judicial review of an agency's modification of a finding of historical fact under subsection (3) of this section, the court shall make an independent finding of the fact in dispute by conducting a review de novo of the record viewed as a whole.").

in the email but was transmitting the recommendations of the union committee, which Danskin was a part of. We review agency findings of fact for "substantial evidence in the record," which is present "when the record, viewed as a whole, would permit a reasonable person to make that finding." ORS 183.482(8)(c). Having reviewed the record, we conclude that substantial evidence supports ERB's findings. The district has not engaged with our standard of review as it applies to findings of historical fact in a contested case, and we decline to further address its complaints in that regard.

We next address ERB's interpretation and application of ORS 260.432(2) (2021), which we review for legal error. ORS 183.482(8)(a). The district asserts, without conducting any statutory analysis, that Danskin sent the email "while on the job during working hours" because that phrase does not specifically exclude the type of short break Danskin took. We reject that argument. The text of ORS 260.432(2) (2021) states that "[n]o public employee shall *** promote or oppose the nomination or election of a candidate *** while on the job during working hours." At the time of Danskin's conduct, the statute did not define the meaning of "while on the job during working hours."[3] However, we do not interpret what constitutes "on the job" in a vacuum. Under Oregon labor laws, employees are entitled to rest breaks from work, during which they are relieved of all duties.[4] *See, e.g.*, ORS 653.261(1) (providing that the Commissioner of the Bureau

_____

[3] The legislature amended ORS 260.432(2) in 2023, Or Laws 2023, ch 268, § 1, and it now clarifies the meaning of "while on the job during work hours." *See* ORS 260.432(7)(c) (providing that the phrase "does not include periods of time during which a public employee is taking time off for a meal break or rest break or periods of time during which a public employee is utilizing otherwise allowable time off in accordance with the labor laws of this state"). The district argues that that amendment demonstrates that rest breaks were not excluded from "on the job during work hours" before the amendment was made. We reject that argument as inconsistent with how we interpret statutes. *See, e.g.*, *City of Portland v. Kessler*, 334 Or App 189, 193 n 4, 556 P3d 648 (2024) ("We reiterate our long-standing position that subsequent amendments are not probative in the interpretation of a statute."). Because the events at issue here occurred in 2021, we do not consider that 2023 amendment in our analysis.

[4] We note that rest periods may be modified by collective bargaining agreements, if the agreement specifically prescribes rules concerning rest periods. OAR 839-020-0050(7). The collective bargaining agreement admitted in the record here does not address the requirement that employees are "relieved of all duties" during rest periods in its provision addressing rest periods, nor did the district cite to the rest period provision for its argument.

of Labor and Industries may adopt rules for minimum rest periods); OAR 839-020-0050(6)(a) (providing that every employer shall provide, for every four hours worked, "a rest period of not less than ten continuous minutes during which the employee is relieved of all duties" and that the rest period shall be provided "approximately in the middle of each segment of four hours"). Here, ERB found that Danskin was on a sanctioned midday break from work. We are not persuaded that an employee is somehow "on the job" during a period when they are relieved of all duties, and the district has not provided any argument or legal authority to support such a conclusion. We thus reject the district's argument based on ORS 260.432.

We next address the main issue in this appeal: ERB's interpretation and application of ORS 243.804(5), which we review for legal error. In interpreting that statute, we apply our familiar methodology of considering the text of the statute in context, along with any legislative history that we determine is useful to our analysis. *State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009). As explained below, we conclude that ERB correctly applied ORS 243.804(5) to Danskin's email in this case.

We start with the text, which is "the best indicator of legislative intent." *Oregon Trucking Assns. v. Dept. of Transportation*, 364 Or 210, 220, 432 P3d 1080 (2019). In general, ORS 243.804 sets out the parameters of reasonable access that a public employer must give to the exclusive representative of a bargaining unit to the employees within that bargaining unit.[5] Specifically, ORS 243.804(5) provides:

"An exclusive representative shall have the right to use the electronic mail systems or other similar communication systems of a public employer to communicate with the employees in the bargaining unit regarding:

"(a)   Collective bargaining, including the administration of collective bargaining agreements;

---

[5] "'Exclusive representative' means the labor organization that, as a result of certification by the board or recognition by the employer, has the right to be the collective bargaining agent of all employees in an appropriate bargaining unit." ORS 243.650(8).

"(b)   The investigation of grievances or other disputes relating to employment relations; and

"(c)   Matters involving the governance or business of the labor organization."

At issue in this case is the meaning of ORS 243.804(5)(c), and whether "matters involving the governance or business of the labor organization" can include emails such as Danskin's, which contained KFACE's recommendations supporting and opposing candidates in the district's school board election.

The district argues that ERB's interpretation was overly broad and effectively strips ORS 260.432(2) of any authority. It further asserts that the email here was not union business, because the correct interpretation of ORS 243.804(5) is that it covers internal communications with its members about "governance," meaning elections of union officers, and "business," meaning notices of member meetings or opportunities to participate or volunteer for the union, or weigh in on bargaining. *Amicus* OSBA asserts that the statutory context of the general policies in ORS 243.656, the express prohibition on the use of public resources for political advocacy in ORS 260.432, and the narrow terms used in ORS 243.804(5) compels the conclusion that the legislature did not intend to permit political advocacy.

We begin with the plain meaning of "matters involving the governance or business of the labor organization," which the legislature did not define. *See Comcast Corp. v. Dept. of Rev.*, 356 Or 282, 296, 337 P3d 768 (2014) ("[A]s stilted as the approach may sometimes seem, we frequently consult dictionary definitions of terms, on the assumption that, if the legislature did not give the term a specialized definition, the dictionary definition reflects the meaning that the legislature would naturally have intended."). A "matter" is "a subject (as a fact, an event or course of events, or a circumstance, situation, or question) of interest or relevance **:** an object of thought or consideration: as (1) **:** a topic under active and usu. serious or practical consideration[.]" *Webster's Third New Int'l Dictionary* 1394 (unabridged ed 2002). "Governance," as relevant here, includes "the act or process of governing," "the office, power, or function of

governing," or "the manner or method of governing : conduct of office." *Id.* at 982. "Business," as used here, means broadly "AFFAIR, MATTER." *Id.* at 302. In turn "affair," is a "MATTER, CONCERN." *Id.* at 35. And, "concern" used as a noun means "a connecting relation : an active or real part (as of interest or sharing)" or "something that relates or belongs to one : business, affair." *Id.* at 470. Taken together, generally speaking, "matters involving governance or business of the labor organization" refers to subjects of interest or relevance involving the act or process of governing the labor organization or involving something that relates or belongs to or is of interest or relevance to the labor organization. However, dictionary definitions only provide a starting point. *See, e.g., State v. Gonzalez-Valenzuela*, 358 Or 451, 461, 365 P3d 116 (2015) (explaining that "a statute's plain meaning is frequently more than the sum of its individually defined terms").

We turn to the broader context of ORS 243.804 to shed more light on the legislature's intended meaning of "matters involving the governance or business of the labor organization." That statute is focused on ensuring that labor organizations have access to employees in the bargaining unit, including access to employees for meetings, access to employee contact information, and the right to use work email to communicate with employees as provided in ORS 243.804(5). ORS 243.804(5)(a) and (b) set out two specific subjects about which an exclusive representative has the right to use email to communicate: "(a) Collective bargaining, including the administration of collective bargaining agreements," and "(b) The investigation of grievances or other disputes relating to employment relations." Those specific topics are matters involving the business of the labor organization, and, indeed, constitute two major subject areas that concern public employee labor organizations. *See, e.g.*, ORS 243.650(13) (defining "labor organization" as "any organization that has as one of its purposes representing employees in their employment relations with public employers"). In that light, the legislature's inclusion of a more general subject area in ORS 243.804(5)(c) suggests that the legislature intended to create a catchall for subjects that are relevant to the labor organization, but do not fall within collective bargaining and employment relations disputes, both

of which are defined terms. *See* ORS 243.650(4) (defining "collective bargaining"); ORS 243.650(7) (defining "employment relations"); *see also* ORS 243.650(12) (defining "labor dispute").

In addition, as part of the same bill that enacted ORS 243.804, the legislature added as a PECBA policy statement that "[i]t is in the public interest to ensure that exclusive representatives of public employees are able to effectively carry out their statutory duties by having direct access to represented employees, including communicating with the employees at the workplace or otherwise," ORS 243.656(5), and that "[e]nsuring meaningful communication between labor organizations and employees increases the effectiveness of public employees' work performance," ORS 243.656(7). *See* Or Laws 2019, ch 429, § 8 (enacted as part of House Bill 2016 (2019)) We read the legislature's reference to "statutory duties" in ORS 243.656(5) as providing policy guidelines for ORS 243.804(5), in that it is unlikely that the legislature intended ORS 243.804(5)(c) to be so broad as to cover any matter potentially relevant to a labor organization; rather, there must be some connection to the business of the labor organization as contemplated under PECBA or federal labor law. However, that does not compel the conclusion, as advocated by the district and OSBA, that a labor organization's email communication that includes promoting or opposing a candidate for public office could never fall under ORS 243.804(5).[6]

---

[6] The parties agree that House Bill (HB) (2019), of which ORS 243.804 was a part, was enacted in response to *Janus v. AFSCME, Council 31*, 585 US 878, 930, 138 S Ct 2448, 201 L Ed 2d 924 (2018), which held that fees or payments to a public sector union may not be deducted from a nonmember's wages unless the employee affirmatively consents to pay. The parties place different significance on the fact that the bill was in response to *Janus*, but do not point to any useful legislative history that sheds light on the legislature's intention with respect to ORS 243.804(5). We, however, do not discern anything from the legislative history that suggests that this portion of the bill was in response to *Janus* and thus do not place significance on that case. *See, e.g.*, Staff Measure Summary, HB 2016 B, Senate Committee on Workforce (May 21, 2019). The legislative history, however, includes testimony that access to members by email was sought so that union's could fulfill their duty of fair representation of employees, which requires communication access to provide information. *See, e.g.*, Video Recording, Senate Committee on Workforce, HB 2016, Apr 18, 2019, at 40:07 (statement of Stacy Chamberlain, Executive Director of Oregon AFSMCE), https://olis.oregonlegislature.gov (accessed July 16, 2026).

We also do not agree with the district or OSBA that reading the statute in that manner conflicts with ORS 260.432(2), or that the text of ORS 260.432(2) somehow forecloses the reach of ORS 243.804(5) to matters of school board elections. As discussed above, the prohibition in ORS 260.432(2), applies to a public employee "while on the job during working hours." That statute does not prohibit a labor organization from communicating with employees about a school board election through the employer's email. To the extent, such as in this case, a public employee is transmitting the email for the labor organization, the prohibitions of ORS 260.432(2) can be adhered to by not doing so "while on the job during work hours," such as Danskin did in this case. There is no conflict between the two statutes or any indication from the text and context of the statutes that the legislature intended the prohibitions in ORS 260.432(2) to apply to labor organization emails allowed under ORS 243.804(5).

Whether a particular labor organization email is protected under ORS 243.804(5)(c) as pertaining to "matters involving the governance or business of the labor organization" must be determined based on the record in the particular case. ERB found that the record established that the school board election was a matter involving the business of KFACE. Specifically, ERB found that the school board had a meaningful role in the collective bargaining relationship between KFACE and the district and the "email communicated KFACE's perspective on candidates for that school board to its represented employees in furtherance of KFACE's role or function as the exclusive representative." Based on its findings, ERB did not err in concluding that Danskin's email fell within ORS 243.804(5)(c). The district does not raise any additional arguments with respect to ERB's conclusion that the district violated ORS 243.672(1) (b), and we affirm ERB's order on that violation.

Finally, we turn to ERB's conclusion that the district violated ORS 243.672(1)(a). That statute provides that it is an unfair labor practice for a public employer to "[i]nterfere with, restrain or coerce employees in or because of the exercise of rights guaranteed in ORS 243.662." As we have explained:

"Subsection (1)(a) encompasses two distinct prohibitions: (1) restraint, interference, or coercion 'because of' the exercise of protected rights; and (2) restraint, interference, or coercion 'in' the exercise of protected rights. As to the first, the emphasis is on the *reasons* for the employer's action: Why did the employer do what the employer did? As to the second, the emphasis is on the *consequences* of a particular action: Is the natural and probable effect of that action to deter employees from exercising a protected right?"

*Portland Assn. Teachers v. Mult. Sch. Dist. 1*, 171 Or App 616, 623, 16 P3d 1189 (2000) (emphasis in original). As a result, motive is an element of a "because of" claim. *Id*. at 623-24. On review, the district argues that the "because of" prong was not met, because the district's motivation was to follow the law on election advocacy and was not based any anti-union animus, when looking at the record as a whole. "The ultimate issue of whether an employer acted coercively and was motivated to do so by the exercise of protected activity is a factual determination[.]" *Id*. at 626.

Here, we conclude that substantial evidence and reason supports ERB's conclusion that the district violated ORS 243.672(1)(a). ERB found that "the record is unrebutted that the [d]istrict disciplined Danskin because of that email, which we found to be protected activity." The district does not argue that the email was not protected activity, should we find that ORS 243.804(5) applies, and the district does not dispute that Danskin was disciplined because of that protected activity. Rather, the district argues that it should not be found in violation of ORS 243.672(1)(a) because the persons involved in Danskin's discipline believed that the email violated ORS 260.432. We reject that argument. That the persons involved in Danskin's discipline subjectively believed that Danskin's activity was not protected does not undermine the record support for ERB's finding that the motive for the discipline was to "[i]nterfere with, restrain or coerce" Danskin because of the protected activity. Thus, the record supports ERB's finding that the district disciplined Danskin because of protected activity. Accordingly, we affirm ERB's order concluding the district violated ORS 243.672(1)(a).

Affirmed.